IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| AHMAD ADISA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 06-4249-CV-C-NKL |
| ) | |
| DAVE DORMIRE, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

Petitioner Ahmad Adisa ("Adisa") has filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. # 1]. Adisa's Petition is denied.

**I.     Factual and Procedural Background**

Shortly before 7 p.m. on December 12, 2000, Ray Lathon was fatally shot at the 12th and Park Recreation Center in St. Louis, Missouri. Later that evening, Michael Stuart called the police and told them that he believed Adisa was Lathon's killer.

According to Stuart, on the night of the murder, he went to see Adisa at Adisa's workplace. The men left Adisa's workplace together and went to the Islamic center to eat dinner and pray. After leaving the Islamic center, Adisa and Stuart had a drink and then Adisa drove Stuart around the city in his truck and told him that he was "looking for a guy" to "get into it with him." Stuart had heard Adisa talk about this "guy" before and knew him to be Lathon. Adisa told Stuart that he was looking for Lathon because there was a contract out on him and suggested that Stuart could make some money if he helped

1

Adisa carry out the contract. Adisa eventually arrived at the recreation center. Once parked, Adisa exited his truck, put on tan coveralls, pulled a small automatic weapon from a bag and entered the building.

Five to ten minutes later, Adisa returned to the vehicle and got in the passenger seat. Stuart, who was then in the driver's seat, drove forward 15 to 20 feet before stopping so the two men could switch seats. As they drove away, Adisa threw the gun–now wrapped in a brown paper bag–out the window and told Stuart that he "popped the guy." Stuart believed that Adisa was joking, but asked to be taken home.

When Stuart arrived home, he and his girlfriend, Charmaine Thorpe, watched the 9 p.m. news and learned that Lathon had been murdered at the recreation center. Stuart then called the police.

At trial, several individuals corroborated Stuart's version of the facts. Robert Kibby, a recreation center employee, saw a man wearing a dark colored skull cap and a tan Dickey jumpsuit with dark colored gloves standing in the building's entryway the night Lathon died. From a photo line-up, he identified Adisa as the man he saw in the entryway.

A second recreation center employee, Shirola Robinson, was in the room with Lathon when he was shot. She saw a man in a light brown jumpsuit and a burgundy ski mask. Finally, a third recreation center employee, Renee Pearson, saw a man in coveralls and a face mask through her office door seconds before hearing gunshots.

2

In addition to the recreation center employees, Thorpe corroborated Stuart's testimony. Thorpe testified that, at the time Stuart returned home on the evening in question, she saw Adisa in the alleyway in his truck. She also testified that Adisa had once suggested to Stuart that he kill Lathon. Finally, she testified that Stuart said that Adisa "did it" and told her to watch the news.

On March 8, 2002, a jury convicted Adisa of first degree murder and armed criminal action in the Circuit Court of St. Louis, Missouri. He was sentenced to life in prison without parole. The Missouri Court of Appeals affirmed Adisa's conviction on direct appeal. *State v. Adisa*, 105 S.W.3d 511 (Mo. App. 2003).

Adisa timely filed a *pro se* Rule 29.15 post-conviction motion, which was amended by appointed counsel and raised each of the issues now raised in Adisa's 2254 Petition. The motion court held an evidentiary hearing and, on July 14, 2004, denied post-conviction relief. The Missouri Court of Appeals affirmed the motion court's judgment on September 27, 2005.

On October 27, 2006, Adisa filed his Petition for Writ of Habeas Corpus in this Court.

**II.    Discussion**

Adisa claims three grounds for relief in his petition for habeas corpus: actual innocence, prosecutorial misconduct by the State for knowingly presenting false testimony, and ineffective assistance of counsel. Adisa's prosecutorial misconduct and ineffective assistance of counsel claims were adjudicated on the merits in state court

3

proceedings. The Court's review of those claims is limited by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.

Under AEDPA, federal courts considering habeas petitions must "exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327, F.3d 748, 751 (8th Cir. 2003). AEDPA mandates that a federal court may not grant a writ of habeas corpus unless the state court's decision (1) was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," (2) involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id*. at 751-52.

### A. Actual Innocence

Adisa argues that he is innocent of Lathon's murder. He asserts both a free standing innocence claim based on newly discovered evidence and a gateway innocence claim in case the Court determines that he defaulted one or more of his other claims for relief.

#### 1. Free Standing Innocence

The Supreme Court has not determined whether a prisoner may receive a writ of habeas corpus based solely on a showing that the prisoner is innocent. *House v. Bell*, 126 S. Ct. 2064, 2086-87 (2006). The Supreme Court has hinted that a federal court may be able to entertain a freestanding actual innocence claim but has indicated that the threshold

4

for any such claim is "extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417, 113 S. Ct. 853 (1993). The Eighth Circuit, however, has interpreted *Herrera* as rejecting free standing actual innocence claims as a basis for habeas review. *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002) (holding that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding" (quoting *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996))). Accordingly, Adisa's free standing innocence claim is not cognizable.

Even if his claim were cognizable, it would fail because Adisa has not submitted evidence of his actual innocence. Adisa asserts that

> [i]f given an opportunity to fully develop the record, including the admission of Michael Stuart that he lied at [Adisa's] trial and the newly developed evidence indicating that a St. Louis, Missouri police officer not only shot and killed Lathon, but also orchestrated the false testimony which led to [Adisa's] conviction, [Adisa] will show that no reasonable factfinder would have found him guilty in light of such evidence.

(Pet. at 5.)

First, Adisa's assertion that a St. Louis police officer actually shot and killed Lathon is made without any evidentiary support. Second, Adisa's claim that Stuart recanting his trial testimony evidences his innocence is logically incorrect. Stuart's current insistence that he was lying at trial does not negate the fact that three recreation center employees as well as Stuart's girlfriend corroborated Stuart's version of the facts as presented at trial.

5

Even if the jury knew that Stuart now claims to have lied at trial, there is no reason to believe that the jury's determination as to Adisa's guilt would change. This is not the first time that Stuart has claimed that his report to the police was a lie. Adisa's trial attorney, Scott Rosenblum, aggressively cross-examined Stuart about an earlier claim that he lied to the police with respect to Adisa's involvement in the Lathon murder. Despite Stuart's contradictory statements, the jury convicted Adisa and nothing suggests they would not still convict him even if told that Stuart has again asserted that he lied to the police and lied at trial.

### 2. Gateway Innocence

Gateway innocence is applicable when a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error . . .." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S. Ct. 851 (1995). In such cases, "the petitioner should be allowed to pass through the gateway and argue the merits of his [defaulted] underlying claim." *Id.* In this case, the Government does not contend and the Court does not find that Adisa defaulted any of the claims raised in his petition. Accordingly, Adisa's gateway innocence claim is inapplicable.

### B. Prosecutorial Misconduct

It is well settled that the proper functioning of our system of criminal justice requires prosecutors to remain faithful to truth, even if such fidelity reduces the likelihood of conviction. *Berger v. United States*, 295 U.S. 78, 88 (1935) (noting that a prosecutor's interest in a criminal prosecution "is not that [she] shall win a case, but that justice shall be done"). Adisa claims prosecutorial misconduct. Specifically, Adisa argues that the State knowingly presented false testimony from Michael Stuart and failed to disclose this false testimony to the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

The State may not deliberately present false testimony at trial or allow it to go uncorrected. *United States v. Bass*, 2007 WL 601480 at *2 (8th Cir. 2007). In this case, to establish a due process violation based on the prosecutorial use of false testimony, Adisa must show that (1) Stuart gave perjured testimony at trial; (2) the prosecution should have known or actually knew that Stuart was lying; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict. *Id*.

At Adisa's post-conviction relief hearing, Adisa's former co-worker, Eddie Hasan, testified that a man claiming to be Stuart called him after the trial and told him that he had been forced to testify against Adisa. In addition, Rosenblum testified that, a year and a half after the trial, Stuart saw him in the courthouse and confessed that he had lied during Adisa's trial. Later, Adisa's post-conviction counsel deposed Stuart. During the deposition Stuart admitted

7

that his entire trial testimony was a lie, but then ended the deposition out of fear that he was admitting to perjury.

After the post-conviction relief hearing, the state judge concluded that Adisa presented no credible evidence that Stuart lied during the trial about Adisa's involvement in the murder, nor that the prosecutor knowingly used false evidence by putting Stuart on the stand. (P's Ex. A at 3.)

This Court finds that the state court's determination of the facts was reasonable in light of the evidence presented. Stuart's trial testimony was corroborated in large part by the testimony of his girlfriend, Charmaine Thorpe. Thorpe testified that, at the time Stuart returned home on the evening in question, she saw Adisa in the alleyway in his truck. She also testified that Adisa had once suggested to Stuart that he kill Lathon. Finally, she testified that Stuart said that Adisa "did it" and told her to watch the news. Stuart's testimony was also corroborated by Mr. Kibby who identified Adisa as the one wearing the tan coveralls and the maroon ski mask who went into the recreation center the night Lathon was killed.

At trial, the jury learned that Stuart recanted his story after completing his police report. Rosenblum cross-examined Stuart extensively:

> Q. You made a statement that you lied to the police about this, haven't you?
> A. Yes.
> Q. You made a statement that you were coerced into making the statements, right?
> A. Yes.

8

>     Q. And that they made you say them, right?
>     A. Yes.
>     Q. Essentially you made things up so you didn't look so bad, right?
>     A. Correct.
>     Q. So you lie when you need to, right?
>     A. Yes.
>     Q. You can lie when you need to help yourself, right?
>     A. Yes.
>     Q. And you can lie when you think it's in your best interest, can't you?
>     A. Yes.

(Resp. Ex. A at 383.)

On re-direct, Stuart admitted that he told people that he had lied to the police because he feared what might happen to him if people believed that he provided the information to the police on his own accord. (Resp. Ex. A at 384.)

Because the state court's findings are reasonable, habeas relief is not warranted on this claim.

### C. Ineffective Assistance of Counsel

Adisa argues that his trial counsel was ineffective for (1) failing to accept the trial court's offer of a continuance to prepare for Kibby's testimony and (2) failing to call two alibi witnesses.

To prove ineffective assistance of counsel, Adisa must show that his counsel's performance was deficient and that Adisa was prejudiced by the defense he received. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984).

#### 1. Kibby

Adisa believes his trial attorney was ineffective because he did not accept the court's offer of a continuance after the court allowed the State to endorse Kibby as a witness on the first day of trial. At the post-conviction relief hearing, Adisa's trial counsel testified that he did not accept the court's offer because he thought he could use the fact that Kibby had only recently come forward to Adisa's advantage. Counsel discussed this decision with Adisa and Adisa agreed to go forward with the trial.

The Missouri Court of Appeals found no error in the motion court's determination that counsel's decision not to accept the continuance was sound trial strategy. In retrospect, counsel's trial strategy may not have been the best course of action, but it is well settled that the "court does not 'second-guess' trial strategy or rely on the benefit of hindsight." *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006) (citation omitted). In this case, counsel's conduct did not fall below an objective standard of reasonableness.

The Missouri Court of Appeals' application of *Strickland* to the facts of this case was not unreasonable. Accordingly, habeas relief is not warranted on this claim.

### 2. Alibi Witnesses

Adisa claims that his trial counsel was ineffective for not calling his wife, Erika Adisa and his friend Vonzell "Hakeem" Jones as alibi witnesses. According to Adisa, his wife and Jones would have accounted for Adisa's whereabouts the night of Lathon's murder.

Counsel testified at Adisa's post-conviction relief hearing that he did not call Adisa's wife because she could not provide an alibi with a timeline that would have excluded Adisa from murdering Lathon and because there was instability in the marriage at the time of trial. In addition, counsel believed that Adisa's wife would have been the only source the State could have used to prove that Adisa purchased a maroon colored ski mask prior to the murder. Thus, counsel viewed her testimony as unhelpful and, potentially, damaging.

As to Jones, counsel testified that Jones' testimony conflicted with that of Adisa's wife. Furthermore, Jones had a prior conviction and counsel believed that linking Adisa to a convict would hinder the defense. Counsel also testified at the post-conviction relief hearing that he and Adisa discussed on several occasions that no alibi defense would be presented at trial.

The Missouri Court of Appeals found no error in the motion court's determination that Rosenblum's decision not to call either Adisa's wife or Jones was a legitimate strategic decision. This Court agrees. *United States v. Vazquez-Garcia*, 2007 WL 45916 at *2 (8th Cir. 2007) ("The decision not to call a witness is a virtually unchallengeable decision of trial strategy." (Quotation omitted)). Accordingly, habeas relief is not warranted on this claim.

## III.   Conclusion

Accordingly, it is hereby

11

ORDERED that Petitioner Ahmad Adisa's Petition for a Writ of Habeas Corpus [Doc. # 1] is DENIED.

> s/ Nanette K. Laughrey
> NANETTE K. LAUGHREY
> United States District Judge

Dated: March 14, 2007
Jefferson City, Missouri